MEMO ENDORSED ORDER, 16 CIV. 2368

At the conclusion of the bench trial in this case, the Court
informed the parties of its rulings, and directed them to jointly
prepare full Proposed Findings of Fact and Conclusions of Law.
Despite seeking and receiving an extension, the parties failed to
submit a joint proposal.  Worse, defendants' proposal (Dkt. No.
78)essentially was for no or limited liability, despite the
Court's decision at the end of the trial.  The Court accordingly
rejects defendants proposal, and accepts plaintiffs' (Dkt. No
77,attached).

The Court adds that the Court findws that Imram Farooq was the
manager for all 3 laundromats, regardless of the corporate owner.
Thus, he is liable for all damages for all of the plaintiffs.

Plaintiff is to submit a proposed partial judgment, including the
amount each plaintiff is awarded against Farooq and Royal Impex.
Plaintiff also is to separately submit a partial proposed
judgement as to the other corporations, to be entered if
appropriate by Judge Oetken, and plaintiff is to serve that
proposed judgment and the Findings as if a Report and
Recommendation.  This is due 3/17.

Defendats' opposition, if any, to plaintiffs' attorneys fee
request is due by 3/24, and pltfs' reply due by 3/31.

Dated: New York, New York
       March 13, 2017

Copy ECF: All Counsel
          Judge Oetken

SO ORDERED:

Hon. Andrew Jay Peck
United States Magistrate Judge

BY ECF

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
BERENICE DIEGO SEVILLA, EVELIN NEGRETE
MENDOZA, JUANA PARRA,  LUCY MARTINEZ,
MARIA LUCINA LEAL MARTINEZ, MARIBEL
MOLINA, and VERONICA AMASTAL AZUCENA
*individually and on behalf of others similarly situated,*

                        *Plaintiffs,*

                        -against-

NEKASA INC. (d/b/a AAA LAUNDROMAT), 5-126
LAUNDROMAT INC. (d/b/a NYC LAUNDROMAT),
123 LAUNDROMAT CORP. (d/b/a 123
LAUNDROMAT), ROYAL IMPEX INC. (d/b/a A1
LAUNDROMAT), IMRAN FAROOQ, NEIL KAPRE,
ANIBAL HERNANDEZ, and MIGUEL SANTANA

                        *Defendants*

------------------------------------------------------------------X

16-cv-02368 (AJP)

~~PROPOSED~~ FINDINGS
OF FACT AND
CONCLUSIONS OF LAW

MEMO ENDORSED
-ATTACHED .

        Plaintiffs Berenice Diego Sevilla, Evelin Negrete Mendoza, Lucy Martinez, Maria Lucina

Leal Martinez, Maribel Molina, and Veronica Amastal Azucena, by their attorneys Michael

Faillace & Associates, hereby submit their proposed findings of fact and conclusions of law.

**Plaintiff's Proposed Findings of Fact**

Facts Relevant to All Plaintiffs

        1.      The Plaintiffs filed this present action in the United States District Court in the

Southern District of New York on June 10, 2016.  (Stipulated Fact No. 1).

        2.      Plaintiffs are former employees of Defendant Imran Farooq for purposes of the

FLSA and NYLL for the entirety of the employment periods relevant to this matter. (Transcript of

Trial held January 23, 2016 ("Transcript"), at 104:10-16)

3.      Royal Impex Inc. bears liability for the Plaintiffs' work at A1 Laundromat; Nekasa

Inc. will be liable for the Plaintiffs' work at AAA Laundromat, and 123 Laundromat Corp. bears

responsibility for employees' work at 123 Laundromat. (Transcript at 104:24-105:5)

*Plaintiff Berenice Diego Sevilla*

4.      Plaintiff Diego was employed by Defendants from approximately September

2015 until April 2016. (Transcript of Trial held on January 23, 2017, ("Transcript at 6:2-5)

5.      Plaintiff Diego was employed by Defendants to work as a clothes folder.

(Transcript at  6:17-22)

6.      Plaintiff Diego was stationed at the AAA Laundromat location. (Transcript at

5:1-2)

7.      From approximately September 2015 until April 8, 2016, Plaintiff Diego worked

from approximately 9:00 a.m. until on or about 5:00 p.m. Mondays, Tuesdays, and Saturdays,

from approximately 11:00 a.m. until on or about 7:00 p.m. Wednesdays, from approximately

2:00 p.m. until on or about 10:00 p.m. Fridays, and from approximately 6:00 a.m. until on or

about 2:00 p.m. Sundays (typically 48 hours per week).  (Transcript at 7:20-8:20)

8.      However, in her last week of employment (approximately March 28 through

April 8, 2016), she worked from 3:00 p.m. to 10:00 p.m. Monday and Tuesday, 2:00 to 10:00

p.m. Wednesday and Friday, and 6:00 a.m. to 2:00 p.m. on Saturday, and 2:00 p.m. to 9:00 p.m.

on Sunday.  (Transcript at 8:23-9:11 )

9.      Throughout her employment with Defendants, Plaintiff Diego was paid her

wages in cash. (Transcript at 7:12-13)

10.     From approximately September 2015 until April 2016, Plaintiff Diego was paid

$7.50 per hour. (Transcript at 6:25-7:5)

11.      Defendants never provided Plaintiff Diego with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked. (Transcript at 7:18-19)

12.      No notification, either in the form of posted notices, or other means, was given to Plaintiff Diego regarding wages as required under the FLSA and NYLL. (Transcript at 7:18-19)

*Plaintiff Evelin Negrete Mendoza*

13.      Plaintiff Negrete was employed by Defendants from approximately June 2014 until April 2016. (Transcript at 34:5-8)

14.      Plaintiff Negrete is employed by Defendants to work as a clothes washer and ironer. (Transcript at 34:18-25)

15.      Plaintiff Negrete was stationed at the AAA Laundromat location. (Transcript at 34:23-24)

16.      From approximately June 2014 until April 8, 2016, Plaintiff Negrete regularly has worked from approximately 7:00 a.m. until on or about 3:00 p.m. Mondays through Fridays and from approximately 6:00 a.m. until on or about 4:00 p.m. Sundays (typically 50 hours per week). (Transcript at 36:23-24)

17.      Throughout her employment with Defendants, Plaintiff Negrete was paid her wages in cash. (Transcript at 35:15-16)

18.      From approximately June 2014 until on or about June 2015, Plaintiff Negrete was paid $7.50 per hour. (Transcript at 35:1-6)

19.      From approximately June 2015 until April 2016, Plaintiff Negrete was paid $8.50 per hour. (Transcript at 35:7-13)

3

20.     Defendants never provided Plaintiff Negrete with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked. (Transcript at 35:24-36:6)

21.     No notification, either in the form of posted notices, or other means, was given to Plaintiff Negrete regarding wages as required under the FLSA and NYLL. (Transcript at 35:24-36:6)

*Plaintiff Lucy Martinez*

22.     Plaintiff Martinez was employed by Defendants from approximately March 2011 until on or about May 2015. (Transcript at 71:1-4)

23.     At all relevant times, Plaintiff Martinez was employed by Defendants to wash, iron, and fold clothes. (Transcript at 71:16-18, 73:4-7,)

24.     At all relevant times to this complaint, Plaintiff Martinez was employed by Defendants to wash, iron, and fold clothes at the AAA laundromat, A1 Laundromat and NYC Laundromat locations. (Transcript at 70:19-21, 72:9-15, 78:5-10)

25.     From approximately March 2011 until on or about February 2013, Plaintiff Martinez regularly worked from approximately 6:00 a.m. until on or about 11:00 p.m. Sundays at the AAA Laundromat location and from approximately 2:00 p.m. until on or about 10:00 p.m. once a month at the A1 Laundromat location. (Transcript at 73:21-74:10)

26.     However, in January 2012 she spent almost four weeks working at NYC Laundromat. She worked there from 2:00 p.m. until on or about 10:00 p.m. six days a week during this period (typically 48 hours per week). (Transcript at 78:15-16, 79:8-14)

27.     From approximately February 2013 until on or about February 2014, Plaintiff Martinez regularly worked from approximately 3:00 p.m. until on or about 11:00 p.m. three or

4

four days a week at the AAA Laundromat location (typically 24 to 32 hours per week).

(Transcript at 75:12-17)

28.      From approximately February 2014 until on or about May 2015, Plaintiff

Martinez regularly worked from approximately 3:00 p.m. until on or about  11:00 p.m. two days

a week, from approximately 3:00 p.m. until on or about  12:30 a.m. another two days a week,

from approximately 6:00 a.m. until on or about 3:00 p.m. Saturdays, and from approximately

6:00 a.m. until on or about 4:00 p.m. Sundays at the AAA laundromat location (typically 54

hours per week).  (Transcript at 76:14-77:4)

29.      From approximately March 2011 until on or about February 2013, Plaintiff

Martinez was paid her wages in cash. (Transcript at 73:13-15)

30.      From approximately April 2013 until on or about May 2015, Plaintiff Martinez

was paid her wages in a combination of check and cash (the amount in the checks varied every

week).

31.      From approximately March 2011 until on or about February 2013, Plaintiff

Martinez was paid $105.00 per day. (Transcript at 71:19-24)

32.      From approximately April 2013 until on or about April 2014, Plaintiff Martinez

was paid $7.00 per hour. (Transcript at 77:13-16)

33.      From approximately April 2014 until on or about January 2015, Plaintiff

Martinez was paid $7.50 per hour.  (Transcript at 77:20-25)

34.      From approximately January 2015 until on or about May 2015, Plaintiff

Martinez was paid $8.00 per hour.  (Transcript at 77:20-25)

35.      Defendants did not provide Plaintiff Martinez with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked. (Transcript at 72:6-8)

*Plaintiff Maria Lucina Leal Martinez*

36.      Plaintiff Leal was employed by Defendants from approximately August 2014 until April 2016. (Transcript at 23:4-5)

37.      Plaintiff Leal was employed by Defendants to wash and fold clothes at the AAA Laundromat location. (Transcript at 22:21-25)

38.      From approximately August 2014 until on or about March 2015, Plaintiff Leal worked from approximately 9:00 a.m. until on or about  5:00 p.m. Mondays and Thursdays, from approximately 8:00 a.m. until on or about  4:00 p.m. Saturdays, and from approximately 7:00 a.m. until on or about  3:00 p.m. Saturdays (typically 48 hours per week). (Transcript at 24:24-25:10)

39.      From approximately March 2015 until April 2016, Plaintiff Leal worked between 40 to 58 hours per week. (Transcript at 27:8-24)

40.      Throughout her employment with Defendants, Plaintiff Leal was paid her wages in cash. (Transcript at 24:13-14)

41.      From approximately August 2014 until April 2016, Plaintiff Leal was paid $7.50 per hour. (Transcript at 24:1-12)

42.      Defendants never provided Plaintiff Leal with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked. (Transcript at 24:21-23)

*Plaintiff Maribel Molina*

6

43.     Plaintiff Molina was employed by Defendants from approximately February

2010 until on or about September 2013 and from approximately April 2014 until on or about

October 2015. (Transcript at 54:22-23, 60:13-16, 61:5-7)

44.     Plaintiff Molina was employed by Defendants to wash and fold clothes at the A1

Laundromat, the AAA Laundromat, and the NYC Laundromat locations. (Transcript at 55:11-13,

57:11-13, 61:15-17)

45.     From approximately February 2010 until on or about March 2010, Plaintiff

Molina worked at the A1 Location from approximately 3:00 p.m. until on or about  10:30 p.m.

Mondays through Fridays (typically 42.5 hours per week). (Transcript at 54:22-23, 56:10-13, 24)

46.     From approximately March 2010 until on or about September 2013, Plaintiff

Molina worked from approximately 6:30 a.m. until on or about  2:30 p.m. Mondays,

Wednesdays, Thursdays, Fridays, and Saturdays and from approximately 6:30 a.m. until on or

about  10:30 p.m. Tuesdays at the NYC Laundromat location (typically 56 hours per week).

(Transcript at 56:23-57:4, 59:8-19, 60:13-14)

47.     In addition, Plaintiff Molina left her job due to maternal leave between

September 2013 and April 2014. (Transcript at 60:13-61:5)

48.     From approximately April 2014 until on or about May 2014, Plaintiff Molina

worked from approximately 6:00 a.m. until on or about 2:00 p.m. Mondays through Saturdays at

the AAA laundromat location (typically 48 hours per week). (Transcript at 63:5-23)

49.     From approximately June 2014 until on or about September 2014, Plaintiff

Molina worked from approximately 6:00 a.m. until on or about 5:00 p.m. Mondays through

Saturdays at the AAA laundromat location (typically 66 hours per week). (Transcript at 63:5-12,

64:24-65:1)

7

50.     From approximately September 2014 until on or about May 2015, Plaintiff
Molina worked from approximately 6:00 a.m. until on or about 2:00 p.m. Mondays through
Saturdays at the AAA laundromat location (typically 48 hours per week). (Transcript at 63:5-12,
64:2-4)

51.     From approximately May 2015 until on or about August 2015, Plaintiff Molina
worked from approximately 6:00 a.m. until on or about  6:00 p.m. four days a week and from
approximately 6:00 p.m. until on or about 5:00 p.m. one day a week at the AAA laundromat
location(typically 59 hours per week). (Transcript at 64:5-13)

52.     From approximately August 2015 until on or about October 2015, Plaintiff
Molina worked from approximately 6:00 a.m. until on or about 2:00 p.m. Mondays through
Fridays at the AAA laundromat location (typically 40 hours per week). (Transcript at 63:5-12,
64:14-16)

53.     From approximately February 2010 until on or about May 2015, Plaintiff Molina
was paid her wages in cash. (Transcript at 55:25-56:1, 58:11-12, 62:1-2)

54.     From approximately May 2015 until on or about October 2015, Plaintiff Molina
was paid her wages in a combination of check and cash (it was always 30 hours or $249.99 in
checks and the rest in cash). (Transcript at 68:5-11)

55.     From approximately February 2010 until on or about September 2013, Plaintiff
Molina was paid $400.00 per week. (Transcript at 58:3-7)

56.     From approximately April 2014 until on or about May 2015, Plaintiff Molina
was paid $7.50 per hour. (Transcript at 61:20-22)

57.     From approximately May 2015 until on or about August 2015, Plaintiff Molina
was paid $8.33 per hour. (Transcript at 62:15-23)

8

58.     From approximately August 2015 until on or about October 2015, Plaintiff Molina was paid $9.00 per hour. (Transcript at 62:24-63:4)

59.     Defendants never provided Plaintiff Molina with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked. (Transcript at 58: 17-19, 62:8-10, 64:22-24)

*Plaintiff Veronica Amastal Azucena*

60.     Plaintiff Amastal was employed by Defendants from approximately April 2015 until on or about July 2015 at the 123 Laundromat location and from approximately August 2015 until March 2016 at the AAA Laundromat location. (Transcript at 42:16-19, 45:12-13 )

61.     Plaintiff Amastal was employed by Defendants to wash, press, dry, and fold clothes. (Transcript at 43:8-11)

62.     From approximately April 2015 until on or about July 2015, Plaintiff Amastal worked from approximately 2:00 p.m. until on or about 10:00 p.m. or 11:00 p.m. Tuesdays through Fridays and from approximately 9:00 a.m. until on or about 8:00 p.m. or 9:00 p.m. Saturdays and Sundays at the 123 laundromat location (typically 54 to 60 hours per week). (Transcript at 44:3-12)

63.     From approximately August 2015 until on or about September 2015, Plaintiff Amastal worked from approximately 10:00 p.m. until on or about 1:00 a.m. Mondays through Sundays at the AAA laundromat location (typically 21 hours per week). (Transcript at 46:8-12)

64.     From approximately September 2015 until March 2016, Plaintiff Amastal has worked from approximately 3:00 p.m. until on or about 11:00 p.m. six days a week at the AAA laundromat location (typically 48 hours per week). (Transcript at 46:13-21)

65.      Throughout her employment with Defendants, Plaintiff Amastal was paid her

wages in cash. (Transcript at 43:18-19, 46:1-2)

66.      From approximately May 2015 until April 2016, Plaintiff Amastal was paid

$7.50 per hour. (Transcript at 43:12-17)

67.      Defendants never provided Plaintiff Amastal with any document or other

statement accounting for her actual hours worked, or setting forth the rate of pay for all of her

hours worked. (Transcript at 44: 24-25, 45:1-6, 47:12-16)

**Plaintiff's Proposed Conclusions of Law**

Conclusions Applicable to All Plaintiffs

1.      The court has subject matter jurisdiction of this action.   29 U.S.C. § 216(b), 28

U.S.C. § 1337 and 28 U.S.C. § 1331.  *See* Joint Pretrial Order at iii.

2.      The claims arising under New York law are so related to the FLSA claims that they

form part of the same case or controversy, and are therefore within the supplemental jurisdiction

of the court. 28 U.S.C. § 1367. *Id.*

3.      Defendants are thus subject to the minimum and overtime wage requirements of

the FLSA.  *See* 29 U.S.C. §§ 206, 207.

4.      Both the FLSA and the NYLL define the term "employer" broadly for purposes of

determining those who bear liability for unpaid wages.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103

(2d Cir. 2013); *see* 29 U.S.C. § 203(d) (defining "employer" to include "any person acting directly

or indirectly in the interest of an employer in relation to an employee"); N.Y. Lab. Law §§ 2(6),

651(6), 190(3); *see also Falk v. Brennan*, 414 U .S. 190, 195 (1973) (emphasizing "expansiveness"

of the definition of employer under the FLSA).

68.    Defendants were employers of Plaintiffs under the FLSA and NYLL. (Transcript of Trial held January 23, 2016 ("Transcript"), at 104:10-105:5)

Minimum Wage and Overtime Claims

69.    Under both federal and New York state law, an employee must be paid a minimum wage. 29 U.S.C. §206; N.Y. Lab. Law §652.

70.    Under the FLSA, the minimum wage rate since July 24, 2009 has been $7.25 per hour. 29 U.S.C. §206(a)(1).

71.    Since July 24, 2009 the New York minimum wage rate has been the same as the FLSA rate, $7.25. N.Y.L.L. §652.

72.    The New York minimum wage rate was the same as the federal rate until December 31, 2013, when the New York minimum wage rate increased to $8.00 per hour. On December 31, 2014, when the New York minimum wage rate increased to $8.75 per hour. On December 31, 2015, when the New York minimum wage rate increased to $9.00 per hour. N.Y.L.L. §652(2); 12 N.Y.C.R.R. §146-1.2.

73.    Under both federal and New York state law, an employee must be paid at the rate of one and one-half times the employee's regular hourly rate for each hour the employee works in excess of 40 hours in a given workweek. 29 U.S.C. § 207(2)(C); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2013).

74.    Overtime pay under the FLSA is calculated by applying a multiplier of one and one half to an employee's "regular rate" of pay. 29 C.F.R. § 778.107; 29 U.S.C. § 207(a)(1).

75.    The regular rate of pay "is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually

worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109;

29 U.S.C. § 207(e).

<u>Records</u>

20.     An employee-plaintiff under the FLSA bears the burden of proving that she

performed work for which she was not properly compensated. *Anderson v. Mt. Clemens Pottery*

*Co.*, 328 U.S. 680, 687 (1946).   The employee's burden "is not high," and can be met "through

estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir.

2011) (internal citations omitted).

21.     Where an employer had failed to maintain accurate and complete records of the

hours employees worked and the amounts they were paid, the plaintiff-employee need only to

submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may

be reasonably inferred." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir.

1997).   The burden then shifts to the employer to come forward with any evidence to either show

"the precise amount of work performed," or to "negative the reasonableness of the inference to be

drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88. If the employer fails to

produce such evidence, the court may award damages to the employee, even though the result be

only approximate. *Id.* at 688.     In the absence of rebuttal by defendants, the employees'

recollections and estimates of hours worked are presumed to be correct. *Amaya v. Superior Tile*

*& Granite Corp.*, 2012 U.S. Dist. LEXIS 5246, *19, 2012 WL 130425 (S.D.N.Y. Jan. 17, 2012);

*Zhao v. East Harlem Laundromat, Inc.*, 2010 U.S. Dist. LEXIS 121335, *15, 2010 WL 4628294

(S.D.N.Y. Oct. 8, 2010) (Report & Recommendation), *adopted in part by* 2010 U.S. Dist. LEXIS

121328, 2010 WL 4642459 (S.D.N.Y. Nov. 12, 2010).

22.     Under the FLSA, employers are required to "make, keep, and preserve" records of

their employees' "wages, hours, and other conditions and practices of employment." 29 U.S.C. §

211(c).

23.     Employers are required to identify certain information in order for their records to

be considered complete and accurate.   Employers are required to maintain records of the

employees': name in full, home address, sex and occupation, time of day and day of the week in

which employee's workweek begins, the employee's regular hourly rate, total hour worked each

day and each week, total daily or weekly earnings, total premium pay for overtime hours, total of

additions or deductions, and the date of payment as well as the dates of the pay period covered by

that payment. 29 C.F.R. § 516.2 (a).

24.     Employers must keep payroll records for at least three years and earnings records

for at least two years. 29 C.F.R. §§ 516.5(a), 516.6(a)(1). Under the NYLL, employers must

"establish, maintain, and preserve" detailed weekly payroll records for each employee "for not less

than six years." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.1; N.Y. Lab. Law § 195, 661.

25.     The employee records required under N.Y. Comp. Codes R. & Regs. tit. 12 § 146-

2.1 should contain: (1) name and address; (2) social security number or other employee

identification number; (3) occupational classification; (4) the number of hours worked daily and

weekly, including the time of arrival and departure for each employee working a split shift or

spread of hours exceeding 10; (5) regular and overtime hourly wage rates; (6) the amount of gross

wages; (7) deductions from gross wages; (8) the amount of net wages; (9)  tip credits, if any,

claimed as part of wages; (11) money paid in cash; and (12) student classification.

26.     At no time did any Defendants use a punch card or a time tracking device to record when employees arrived and left. In addition, Defendants offered no evidence into the trial record concerning Plaintiffs' hours worked or pay received.

27.     In the light of Defendants' failure to maintain legislatively required records, Plaintiff's testimony must be presumed correct. *Amaya v. Superior Tile & Granite Corp.*, 2012 U.S. Dist. LEXIS 5246, *19, 2012 WL 130425 (S.D.N.Y. Jan. 17, 2012); *Zhao v. East Harlem Laundromat, Inc.*, 2010 U.S. Dist. LEXIS 121335, *15, 2010 WL 4628294 (S.D.N.Y. Oct. 8, 2010) (Report & Recommendation), *adopted in part by* 2010 U.S. Dist. LEXIS 121328, 2010 WL 4642459 (S.D.N.Y. Nov. 12, 2010).   Accordingly, I adopt the Plaintiff's recollection of their hours worked and payment received.

Willfulness, the Statute of Limitations, and Liquidated Damages

28.     Under the FLSA, the statute of limitations applicable to claims for unpaid wages is two years, but is extended to three years if the violation is willful.  29 U.S.C. § 255(a).

29.     Under the FLSA a violation is considered willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

30.     Defendants were aware of the requirements of the FLSA and NYLL, yet chose not to follow them.  Defendants knew, or willfully ignored, that the law did not permit employees to be paid at a rate below minimum wage if they were not properly notified of the tip credit.

31.     Defendants deliberate decision to disregard both FLSA and New York law, as well as Defendants' failure to timely take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law. *Doo Nam Yang v. ACBL Corp.,* 427 F.

14

Supp. 2d 327, 340 (S.D.N.Y. 2005) ("A failure to pay is 'willful' when the employer knowingly,

deliberately, or voluntarily disregards its obligation to pay wages") (internal quotation marks

omitted).

32.     As Plaintiffs can establish that Defendants' violation of the FLSA was willful, the

Plaintiffs are entitled to a three-year limitations period under the FLSA, *i.e.*, starting from April 7,

2012, three years before the complaint was filed.  29 U.S.C. §255; *Decraene v. Neuhaus (U.S.A.),*

*Inc.*, 2005 U.S. Dist. LEXIS 10836, at *23-*24 (S.D.N.Y. 2005).

33.     The statute of limitations for claims brought under the NYLL is six years.  N.Y.

Lab. Law § 663(3).

34.     Causes of action under the New York Labor Law accrue in the same manner as do

causes of action under the FLSA.  *See Godlewska v. Human Dev. Assoc., Inc.*, 2006 U.S. Dist.

LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006).  Plaintiffs may therefore recover unpaid minimum

and overtime wages under New York state law for the period from and after May 29, 2009.

35.     Under the FLSA, once liability is established the employee is entitled to recover all

unpaid minimum and overtime wages, as well as "an additional equal amount as liquidated

damages." 29 U.S.C. § 216(b).  "Liquidated damages are not a penalty exacted by the law, but

rather compensation to the employee occasioned by the delay in receiving wages due caused by

the employer's violation of the FLSA."  *McLean v. Garage Mgmt. Corp.*, 2012 U.S. Dist. LEXIS

55425, *12, 2012 WL 1358739 (S.D.N.Y. April 19, 2012) (quoting *Herman v. RSR Sec. Services*

*Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)). The employer may escape liability for liquidated damages,

if it can demonstrate that "it acted in subjective 'good faith' with objectively 'reasonable grounds'

for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health*

*and Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).  The employer must make establish its

subject good faith and objective reasonableness by "plain and substantial evidence." *Solis v. Cindy's Total Care, Inc.*, 2012 U.S. Dist. LEXIS 1808, *74, 2012 WL 28141 (S.D.N.Y. Jan. 5, 2012) (quoting *Moon v. Kwon*, 248 F.Supp.2d 201, 234 (S.D.N.Y. 2002). "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *McLean*, 2012 U.S. Dist. LEXIS 55425, *13 (quoting *Herman*, 172 F.3d at 142). "To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Id.* (quoting *Barfield*, 537 F.3d at 150.

36.     As reviewed above, Defendants' action were willful or at a minimum reckless; accordingly, liquidated damages apply.

37.     Under the NYLL, as under the FLSA, an employee is entitled to recover liquidated damages unless the employer can establish a good faith basis for having failed to pay the required wages. N.Y. Lab. Law § 198(1-a); *Hart v. Rick's Cabaret*, 2013 U.S. Dist. LEXIS 129130, *88-89, 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013).   Given the uncontroverted evidence of Defendants' willfulness and lack of good faith, Plaintiffs are, by statute, entitled to liquidated damages under New York Labor Law.  NYLL § 663(1).

38.     Through April 8, 2011, liquidated damages on unpaid wages and spread of hours pay under the New York Minimum Wage law are computed at 25% of the unpaid wages.  The New York Labor Law was amended effective April 9, 2011, amending the recoverable amount of liquidated damages for unpaid wages to 100 percent; thus, from April 9, 2011 through the end of plaintiffs' employment, liquidated damages under the New York Labor Law are computed at 100% of the unpaid wages.  NYLL § 663(1).

39.     This Court shall permit Plaintiffs to recover a single-set of liquidated damages.

40.     Under New York law, the Court may award prejudgment interest pursuant to N.Y. C.P.L.R. § 5001 on an award of back pay. *See McLean*, 2012 U.S. Dist. LEXIS 55425 at *27 ("courts typically award prejudgment interest on damages for NYLL violations"); *Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469, 485-86 (S.D.N.Y. 2001); *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc. 2d 325, 336 (Sup. Ct. N.Y. C'ty 1997). This is because under New York (and federal) law, prejudgment interest compensates the plaintiff for the defendant's interest-free use of the plaintiff's money. *See Gierlinger v. Gleason*, 160 F.3d 858, 874 (2d Cir. 1998); *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 83 (2d Cir. 1994); *Reilly v. Natwest Mkts. Group*, 181 F.3d 253, 265 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000).

41.     In addition, under New York law, prejudgment interest can be awarded in addition to liquidated damages. This is because under New York law liquidated damages are considered a penalty, serving a different purpose as a sanction for willfully failing to pay wages. *Carter v. Frito-Lay, Inc.*, 425 N.Y.S. 2d 115, 115 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981).

42.     The New York prejudgment interest rate applies. *McLean*, 2012 U.S. Dist. LEXIS 55425 at *28. Under N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent (9%) per annum simple interest. *Id.* As to the date from which interest is to be calculated, the statute states that "[w]here . . . damages were incurred at various times, interest [may] be computed . . . upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). When claims that are reduced to judgment have arisen on different dates, the Court may compute prejudgment interest from an appropriate single median date. *See McLean*, 2012 U.S. Dist. LEXIS 55425 at *28 ("prejudgment interest on the plaintiffs' NYLL unpaid overtime wage damages shall be computed at a rate of nine (9) percent per annum from a single reasonable intermediate date").

Thus, prejudgment interest on Plaintiffs' back pay awards should be computed from the median of each relevant period to the date of judgment.

Spread of Hours Claims

43.     Separate from any other regular or overtime wages, when an employee works more than 10 hours on any given day, the employee is entitled to receive "spread of hours" pay, which is an additional one-hour's pay at the applicable minimum wage rate.  12 NYCRR § 142-2.4(a) (2009).

44.     Plaintiffs Lucy Martinez, Maribel Molina, and Veronica Amastal Azucena testified they worked over 10 hours per day at several points during their employment. There is no evidence in the records suggesting Defendants properly paid an additional hour's pay for these days. Accordingly, Plaintiffs were improperly denied spread of hours wages. 12 NYCRR § 142-2.4(a) (2009).

Wage Notice and Wage Statements Under the NYLL

45.     Under the NYLL, employers must provide employees with wage and hour notices. NYLL §195(1)(a).

46.     Specifically, the notices must inform the employee, in both English and the employee's primary language, of the rate of pay.  Employees must be provided such notices at the time of hiring and on or before February first of each subsequent year of employment.  *Id.*  An employee who does not receive such notices can recover damages of $50 per week, up to a statutory maximum of $2,500.  NYLL §198(1-b).  The New York Labor Law, since April 9, 2011, has required employers to provide employees at the time of hiring, and before February 1 in each subsequent calendar year through 2014, a written notice containing the following information: the rate or rates of pay and basis thereof,  whether paid by the hour, shift, day, week, salary, piece,

commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. The notice must be provided in English and in the language identified by the employee as his primary language.

47.     The employer has the burden of proving compliance with the notification requirements of §195(1)(a).

48.     There is no evidence that Defendants ever provided any NYLL compliant wage and hour notices to Plaintiffs.

49.     Plaintiffs are each entitled to damages of $50 per week of violation, up to a maximum of $2,500.

50.     The NYLL also requires employers to provide wage statements with each payment of wages, which must include, among other things, the rate of pay and basis thereof, and "allowances, if any, claimed as part of the minimum wage." NYLL §195(3). The wage statement must list the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

51.     An employee who does not receive such statements can recover $100 per week of violation, up to a maximum of $2,500. NYLL §198(1-d).

52.    There is no evidence in the record that Plaintiffs ever received any document satisfying the requirements of NYLL §195(3). (Transcript III at 371:2-5)

53.    Plaintiffs are entitled to statutory damages of $100 per week, up to a maximum of $2,500.  NYLL §198(1-d).

Attorneys' Fees

54.    The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages.  29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").  Accordingly, Plaintiffs should be awarded attorneys' fees and costs in an amount to be determined after trial.

55.    The proper damages calculation for the named Plaintiffs is contained within Exhibit A. Exhibit A applies the applicable federal and New York state law described *supra*, and distinguishes between Defendants' differing liabilities.

56.    Plaintiffs are entitled to pre-judgment interest on unpaid minimum and overtime wages to be determined at the time of judgment. (*See* Exhibit A)

57.    Plaintiffs are entitled to costs and reasonable attorneys' fees, in an amount to be determined.

58.    The judgment against Defendants should provide that if any amounts remain unpaid ninety days after issuance of the judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of the judgment shall automatically increase by fifteen percent.  NYLL §198(4).

Dated:  New York, New York
        March 10, 2017

20

  __/s/ Shawn Clark
Shawn Clark, Esq.
MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 2020
New York, NY 10165
(212) 317-1200
michael@faillacelaw.com
*Attorneys for Plaintiffs*

| Plaintiff | Pay Period From | Pay Period To | No. Weeks in Pay Period | Hours Per Week in Period | No. of 50hr Days Per Wk in Period | Calc. Regular Rate of Pay | Calc. OT Rate of Pay | Minimum Wage Rate | Minimum Overtime (OT) | Lawful Weekly Pay | "Credited" Weekly Pay | Underpayment Per Week | Unpaid Wages & OT | Liq. Damages on Wages & OT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Berenice Diego Sevilla**
Damages as to Defendants Imran Farooq and Nokssa Inc.

**Evelin Yngenia Mendoza**
Damages as to Defendants Imran Farooq and Nokssa Inc.

**Lucy Martinez**
Damages as to Defendants Imran Farooq and Nokssa Inc.

**Lucy Martinez**
Damages as to Defendant Royal Impex Inc.

**Lucy Martinez**
Damages as to Defendant Nekssa Inc.

**Maria Lucila Leal Martinez**
Damages as to Defendants Imran Farooq and Nekssa Inc.

**Maribel Molina**
Damages as to Defendants Imran Farooq

**Maribel Molina**
Damages as to Defendant Royal Impex Inc.

**Maribel Molina**
Damages as to Defendant Nekssa Inc.

**Veronica Amastal Aquema**
Damages as to Defendant 123 Laundromat Corp.

**Veronica Amastal Aquema**
Damages as to Defendants Imran Farooq
Damages as to Defendant Nekssa Inc.

**Total Damages as to Defendant Imran Farooq**

1 of 4

| Plaintiff | Pay Period From | To | No. Weeks in Pay Period | Hours Per Week in Period | No. of 6OH Days Per Wk in Period | Calc. Regular Rate of Pay | Calc. OT Rate of Pay | Minimum Wage Rate | Minimum Overtime (OT) | Lawful Weekly Pay | "Credited" Weekly Pay | Underpayment Per Week | Unpaid Wages & OT | Liq. Damages on Wages & OT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

| Plaintiff | Pay Period From | To | Unpaid Spread of Hours (SOH) Pay | Liq. Damages on Unpaid SOH | Annual Wage Notice | Weekly Wage Statement | Pre Jud. Interest (PJI) on OT & Wages | Total For Period |
|---|---|---|---|---|---|---|---|---|
| **Berenice Diego Sevilla** Damages as to Defendants Imran Farooq and Nekasa Inc. | | | | | | 2,500.00 | | 2,650.00 |
| | | | | | | | | 582.00 |
| | | | | | | | | 582.00 |
| | | | | 1,556.00 | | 2,500.00 | | 10,244.00 |
| **Emily Angeles Mendoza** Damages as to Defendants Imran Farooq and Nekasa Inc. | | | | | 2,500.00 | 2,500.00 | | 6,500.00 |
| | | | | | | | | 4,515.00 |
| | | | | | | 2,500.00 | | 18,143.00 |
| **Lucy Martinez** Damages as to Defendants Imran Farooq | | | | 319.00 | 2,500.00 | 2,500.00 | 1,555.01 | |
| **Lucy Martinez** Damages as to Defendant Royal Impex Inc. | | | 696.00 | 696.00 | 2,500.00 | 2,500.00 | 1,555.01 | 16,116.76 |
| **Lucy Martinez** Damages as to Defendant Nekasa Inc. | | | 311.75 | 311.75 | 2,500.00 | 2,500.00 | | 15,926.50 |
| **Maria Lucila Leal Martinez** Damages as to Defendants Imran Farooq and Nekasa Inc. | | | | | | 2,500.00 | | 12,344.60 |
| **Maribel Molina** Damages as to Defendant Imran Farooq | | | 1,896.50 | 1,896.50 | 2,500.00 | 2,500.00 | 29.95 | 46,515.30 |
| **Maribel Molina** Damages as to Defendant Royal Impex Inc. | | | 1,326.75 | 1,326.75 | | | 29.95 | 29,877.00 |
| **Maribel Molina** Damages as to Defendant Nekasa Inc. | | | 568.75 | 568.75 | 2,500.00 | 2,500.00 | | 19,345.63 |
| **Veronica Amastal Azucena** Damages as to Defendant 123 Laundromat Corp. | | | 297.50 | 297.50 | 2,500.00 | 2,500.00 | | 9,972.50 |
| **Veronica Amastal Azucena** Damages as to Defendant Imran Farooq | | | | | 2,500.00 | 2,500.00 | | 9,972.50 |
| **Veronica Amastal Azucena** Damages as to Defendant Nekasa Inc. | | | | | 2,500.00 | 2,500.00 | | 11,932.50 |
| **Total Damages re Defendant Imran Farooq** | | | 3,300.75 | 3,300.75 | 14,000.00 | 15,000.00 | 1,584.96 | 130,760.06 |

| Filing Date | |
|---|---|
| FLSA | 6/29/2015 |
| NYLL | 6/29/2012 |
| Amendment | 6/29/2009 |
| Today | 3/10/2017 |

| Plaintiff | Pay Period | | Unpaid Spread of Hours/BON Pay | Liq. Damages on Unpaid SOH | Annual Wage Notice | Weekly Wage Statement | Pre-Jud. Interest (P-JI on OT & Wages) | Total Per Period |
|---|---|---|---|---|---|---|---|---|
| | From | To | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

4 of 4